IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00141-LTB

KEVIN PONIS,

      Applicant,

v.

STEVE HARTLEY, Warden of Arkansas Valley Correctional Facility,
TOM CLEMENTS, Executive Director, Colorado Department of Corrections
    (CDOC), and
JOHN SUTHERS, the Attorney General of the State of Colorado,

      Respondents.

_____

ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS
_____

LEWIS T. BABCOCK, Senior Judge

      This matter is before the Court on Applicant Kevin Ponis' Amended Application

for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [ECF No. 15], filed on March

19, 2012.  Mr. Ponis has been represented by counsel since September 29, 2012.

[ECF No. 44].  Respondents have filed an Answer  [ECF No. 43] and Applicant has filed

a Reply [ECF No. 49].  Having considered the same, along with the state court record,

the Court concludes that the Application should be denied.

## I.  BACKGROUND AND APPLICATION

      On January 10, 2005, Mr. Ponis was convicted by a Jefferson County District

Court jury of one count of sexual assault on a child by a person in a position of trust –

pattern in Case No. 04CR1488. [ECF No. 15, at 2; *see also* ECF No. 26-1, at 5].[1]  On

_____

[1]For ease of reference, the Court's citation to documents filed in this case includes the page numbers assigned to the documents by the Court's electronic filing base, CM-ECF).

March 8, 2005, he was sentenced to an indeterminate prison term of eleven years to life.  [*Id.*].

The Colorado Court of Appeals affirmed Mr. Ponis' conviction on direct appeal in *People v. Ponis,* No. 05CA0810 (Colo. App. Nov. 8, 2007) (unpublished decision).  [ECF No. 26-3].  The Colorado Supreme Court denied Applicant's request for certiorari review on September 2, 2008.  [ECF No. 26-4].

Mr. Ponis filed a motion for sentence reconsideration pursuant to Colorado Rule of Criminal Procedure 35(b) on January 26, 2009.  [ECF No. 26-1, at 9-10].  The trial court denied the motion on February 2, 2009.  [*Id.* at 9].  Applicant did not file an appeal.  [*Id.*].

Mr. Ponis filed a motion for post-conviction relief pursuant to Colo. Crim. P. Rule 35(c) on October 30, 2009.  [*Id.* at 9].  The state trial court denied the motion on December 22, 2009.  [*Id.*].  The Colorado Court of Appeals affirmed the trial court's order in *People v. Ponis*, No. 10CA0284 (Colo. App. May 26, 2011) (unpublished decision).  [ECF No. 26-6].  The Colorado Supreme Court denied Applicant's request for certiorari review on January 9, 2012.  [ECF No. 26, at 2 n.2 of 22].

Mr. Ponis initiated this action on January 19, 2012.  He asserts three claims in the Amended Application, all of which include several sub-claims.

First, Applicant claims that his trial counsel was ineffective in failing to:

(a) investigate information provided to the defense by teachers, students, and coaches that Applicant reasonably believed the victim was eighteen years old;
(b) request a special prosecutor due to an alleged conflict of interest with the District Attorney's office who was a family member of Applicant's ex-wife;

(c) research and understand the law concerning other acts evidence and object to the admission of evidence that Applicant had a sexual relationship with two eighteen-year-old women;

(d) object to improper jury instructions that failed to require the jury to find that the victim was both a child and under eighteen years old;

(e) raise issues on direct appeal that would have been successful but were barred by a state procedural rule in Applicant's postconviction proceeding;

(f) contest a government motion for the introduction of evidence;

(g) object to unfair testimony at trial;

(h) object to the prosecutor's questions and closing argument regarding Applicant's extra-marital affairs;

(i) call available witnesses;

(j) conduct any legal investigation; and,

(k) understand the law on key legal issues, including but not limited to, the law regarding similar acts evidence and immaterial, irrelevant evidence.

[ECF No. 15, at 13-17].

In claim two, Mr. Ponis asserts that he was denied his due process right to a fair trial by:

(a) the admission of testimony from two women with whom Applicant had a sexual relationship when they were eighteen years old;

(b) the prosecutor's emphasis of Applicant's prior sexual relationships in closing argument;

(c) improper jury instructions that failed to require the jury to find that the victim was a child;

(d) a conflict of interest that resulted in a vindictive prosecution; and,

(e) the prosecutor's questions and arguments regarding Applicant's infidelity to his wife.

[*Id.* at 13-14].

For his third claim, Mr. Ponis challenges:

(a) his life sentence as disproportionate to his crime, in violation of the Eighth Amendment;

(b) the constitutionality of Colorado's position of trust statute, COLO. REV. STAT. (C.R.S.) § 18-3-405.3, under the First, Eighth and Fourteenth Amendments;

(c) the constitutionality of Colorado's Sex Offender Lifetime Supervision Act of 1998 (SOLSA), § 18-1.3-1002, *et al.*, C.R.S., under the First, Eighth and Fourteenth Amendments.

3

[*Id.*].

Respondents have conceded that the Application is timely pursuant to the AEDPA one-year limitation period, 28 U.S.C. § 2244(d)(1). [ECF No. 26, at 7]. Respondents have further conceded that Mr. Ponis exhausted state remedies for claims 1(a) and 1(c) [*Id.* at 9-12].  Respondents argued in the pre-answer response that Applicant's remaining claims are procedurally defaulted. [*Id.* at 9-19].  The Court concluded in an August 7, 2012 Order that Applicant properly exhausted state court remedies for claims 1(a) - 1(d) and 3(a).  [ECF No. 36].  The Court dismissed the remainder of Applicant's claims as procedurally barred on August 7, 2012.  [*Id.*]. Accordingly, the Court reviews the merits of claims 1(a) - 1(d) and 3(a) below.[2]

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

---

[2]Respondents continue to argue in their Answer that claims 1(b) and 1(d) are not exhausted. [ECF No. 43, at 5].  Respondents further maintain that in claim 3(a), Mr. Ponis challenges the state statutes under which he was sentenced, but does not asserts an Eighth Amendment challenge to his sentence. [*Id.*].  The Court rejects these arguments for the reasons discussed in the August 7, 2012 Order. [ECF No. 36].

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404–05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir.2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule

5

from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at
407–08. Additionally, we have recognized that an unreasonable
application may occur if the state court either unreasonably extends, or
unreasonably refuses to extend, a legal principle from Supreme Court
precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision

is 'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law." *Maynard*,

468 F.3d at 671. In addition,

evaluating whether a rule application was unreasonable requires
considering the rule's specificity. The more general the rule, the more
leeway courts have in reaching outcomes in case-by-case determinations.
[I]t is not an unreasonable application of clearly established Federal law
for a state court to decline to apply a specific legal rule that has not been
squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted). In conducting this analysis,

the Court "must determine what arguments or theories supported or . . . could have

supported[ ] the state court's decision" and then "ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding

in a prior decision of [the Supreme] Court." *Id.* Moreover, "review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the

claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

## III. MERITS OF THE CLAIMS

### A. Ineffective Assistance of Counsel Claims

In claims 1(a) - 1(d), Mr. Ponis asserts that his trial counsel was ineffective in failing to: (a) investigate information provided to the defense by teachers, students, and coaches that Applicant reasonably believed the victim was eighteen years old;

7

(b) request a special prosecutor due to an alleged conflict of interest with the District Attorney's office who was a family member of Applicant's ex-wife; (c) research and understand the law concerning other acts evidence and object to the admission of evidence that Applicant had a sexual relationship with two eighteen-year-old women; and, (d) object to improper jury instructions that failed to require the jury to find that the victim was both a child and under eighteen years old.

To prevail on a claim of ineffective assistance of counsel, Mr. Ponis "must show both: (1) constitutionally deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable; and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding . . . would have been different." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).  Under the prejudice prong, the likelihood of a different result must be substantial, not just conceivable.  *Strickland*, 466 U.S. at 693.  Mere speculation is not sufficient to satisfy this burden. *See Turrentine v. Mullin,* 390 F.3d 1181, 1205 (10th Cir. 2004) ("Mr. Turrentine must show more than that his counsel's action had 'some conceivable effect on the outcome of the proceeding,' because '[v]irtually every act or omission of counsel would meet that test.'") (quoting *Strickland*, 466 U.S. at 693); *United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995).  The Court need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one. *Strickland*, 466 U.S. at 697.

The Colorado Court of Appeals addressed Applicant's ineffective assistance of counsel claim in his state post-conviction proceeding and made the following findings of fact:

[W]e conclude, as did the trial court, that the evidence of [Applicant's] guilt was overwhelming. It included proof of the victim's status as a high school student and [Applicant's] status as her teacher, counselor, and coach; the victim's testimony about the nature of the sexual relationship; and the victim's description of her discussions with [Applicant] about her age before she entered into a sexual relationship with him. There was also forensic evidence indicating the presence of semen matching [Applicant's] DNA found in secluded locations around the school where the victim testified she had engaged in sexual acts with him.

The prosecution presented recordings of two telephone calls between [Applicant] and the victim. In the first call, [Applicant] did not express any surprise when the victim stated she was seventeen years old during their sexual relationship. He admitted that he had engaged in various sexual acts with her and made a video recording of at least one of the acts. He added that, when the victim was a freshman, he cared about her "in a different manner," she was "always one of [his favorites]," and he had a connection with her that "would develop into a stronger relationship."

In the second call, the victim again stated that she had been seventeen at the time of the relationship, and [Applicant] again did not express surprise. [Applicant] said that he was seeing a therapist, but that he had not told the therapist the victim had been seventeen years old. He thought it might have been against the law for him to have had sex with a seventeen-year-old, but he added that the "age of consent" in Colorado was "fifteen or sixteen."

He said that the victim would not get in trouble if she told a therapist that, as a seventeen-year-old, she had a sexual relationship with "an older guy." However, when addressing whether he would get in trouble for being in a sexual relationship with the victim, he said that if anybody "found out [about their sexual relationship] that was it for [him], [that he was] done" because "position of trust would be an issue."

At trial, [Applicant] admitted almost every element of the charges against him. He contested only (1) the dates of the alleged incidents; and (2) whether he reasonably believed that the victim was over eighteen years of age at the time.

[ECF No. 26-6, at 7-8]. The state appellate court's factual findings that the evidence

against Mr. Ponis was "overwhelming" are presumed correct and are supported by the

state court record of Applicant's trial. [*See* State Court R. 1/5/05 Trial Tr., at 26-88; 285-

89; 316-17; 1/6/05 Trial Tr., at 4; 1/7/05 Trial Tr., at 57-67, 84, 94-96, 105, 111, 120,

125-26; People's Exs. 15 and 21].

The Colorado Court of Appeals rejected Applicant's ineffective assistance of

counsel claims under the *Strickland* standard, *see* ECF No. 26-6, at 4-5, based on the

following reasoning:

> We further conclude that, because of this overwhelming proof,
> there is no reasonable probability that the alleged deficiencies in counsel's
> performance would undermine our confidence in the verdict at
> [Applicant's] trial. This is so because:

> • The evidence of guilt is overwhelming without the testimony from
> the two former students who had sexual relations with [Applicant].
> Their testimony is not "the ounce that makes the pound"; rather, it
> makes what is already overwhelmingly sufficient even more so.

> • [Applicant] claimed that the district attorney's office should have
> been disqualified, and a special prosecutor appointed, because a
> member of the district attorney's office was his wife's relative.
> However, [Applicant] did not name this relative; or explain in
> sufficient detail how confidential information was passed from
> [Applicant], to his wife, to the relative, or what the confidential
> information was. Thus, [Applicant] has not shown how the
> substitution of a special prosecutor would have created a
> reasonable probability that the verdict would have been different.

> • The school's football coach allegedly would have conceded that,
> although the database in question did not include students' ages
> before [Applicant] began his sexual relationship with the victim,
> information about the student's ages was available in the database
> at the time that their sexual relationship began. In addition, the
> record contains significant additional evidence, including the
> victim's testimony and [Applicant's] statements during the recorded
> telephone calls, to establish that he knew her age.

> Last, [Applicant] contends that defense counsel should have asked
> the trial court to instruct the jury that it was required to find, beyond a
> reasonable doubt, that the victim was a "child." He asserts such an
> instruction is required because the statute proscribing sexual assault on a
> child by one in a position of trust states that the crime is committed when
> "the victim is a child less than eighteen years of age." § 18-3-405.3(1),

C.R.S. 2010. He reasons that the word "child" in this context establishes an element of the offense based on a victim's maturity level, such that he could have been acquitted if the jury found that the victim, although under the age of eighteen, was mature enough to be an "adult."

We are not persuaded by this argument because, for two reasons, it is based on a flawed legal premise. First, there is no indication in section 18-3-405.3(1) that the legislature intended to make a victim's maturity level an element of the offense.

Second, in context, we construe the phrase "child less than eighteen years of age" to mean simply that persons under the age of eighteen are children in the eyes of the law in Colorado. This is not a controversial proposition because the legislature has employed similar language repeatedly. *See, e.g.*, § 13-10-113(4), C.R.S. 2010 ("[A] municipal court has the authority to order a child under eighteen years of age confined in a juvenile detention facility . . . ."); § 13-14-101(2.2), C.R.S. 2010 (for purposes of civil protection orders, "'Minor Child' means a person under eighteen years of age."); § 14-6-101, C.R.S. 2010 (class five felony of nonsupport concerns persons who "willfully neglect[], fail[], or refuse[] to provide reasonable support and maintenance for . . . children under eighteen years of age"); § 18-3-502(2), C.R.S. 2010 (for purposes of the human trafficking statute, "'child' means a person under eighteen years of age"); § 19-1-103(18), C.R.S. 2010 ("'Child' means a person under eighteen years of age."); § 19-5-201, C.R.S. 2010 ("Any child under eighteen years of age . . . may be adopted.").

This second point is supported by the statutory language of the affirmative defense on which defendant relied. Section 18-1-503.5(1), C.R.S. 2010, states in relevant part:

> If the criminality of conduct depends on a *child* being younger than eighteen years of age and the *child* was in fact at least fifteen years of age, it shall be an affirmative defense that the defendant reasonably believed the *child* to be eighteen years of age or older.

(Emphasis added.)

[ECF No. 26-6, at 8-11].

The Court finds that the Colorado Court of Appeals' decision was based on a

reasonable determination of the facts in light of the evidence presented at Applicant's

trial and was consistent with the *Strickland* standard.

First, Mr. Ponis has failed to establish a reasonable probability that the jury would have exonerated him if the testimony of the two former-eighteen-year-old students with whom he had sexual relations was excluded.  The determinative issue at trial was Applicant's reasonable belief about the *victim's age* at the time he admittedly had sexual relations *with her*.  Because of the overwhelming evidence against Applicant, it is not likely that the jury would have reached a different verdict if the testimony of the other women had been excluded.  *See Strickland*, 466 U.S. at 699 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").

Second, Mr. Ponis has not shown that he was prejudiced by trial counsel's failure to call defense witnesses to testify that Applicant reasonably believed the victim was eighteen years old at the time of their sexual relationship.  Testimony from witnesses, such as the high school football coach, that teachers were not likely to access a student's personal information, was not reasonably likely to have resulted in an acquittal, in light of the following evidence presented at trial:  information concerning a student's age was available to Mr. Ponis during the relevant time period;[3] the victim's testimony that she and Applicant discussed her age before and during their sexual relationship; and, Mr. Ponis' comments to the victim during recorded telephone calls in response to her statements concerning her age.

---

[3]State Court R. 1/4/05 Trial Tr., at 79-80.

Next, Mr. Ponis has not demonstrated a reasonable probability that the outcome of his state criminal proceeding would have been different if trial counsel had requested the appointment of a special prosecutor.   Applicant alleges only that a member of the district attorney's office was his wife's cousin at the time of his criminal prosecution. This circumstance, by itself, does not establish that the deputy district attorney engaged in conduct that prevented Mr. Ponis from receiving a fair trial.  *See People v. Dunlap*, 124 P.3d 780, 798 (Colo. App. 2004) (explaining basis for disqualification under § 20-1-107(2), C.R.S.).   Moreover, Mr. Ponis' assertion that the district attorney was overzealous and biased against him because he did not offer Applicant a plea bargain does not demonstrate a basis for disqualification.  *See generally People v. Dist. Court*, 632 P.2d 1022, 1024 (Colo.1981) (recognizing that the power to initiate, alter, or dismiss charges rests solely within the prosecuting attorney's discretion, and may not be controlled or limited by judicial intervention.).   Applicant's speculation that he may have procured a favorable plea agreement if a special prosecutor had been appointed is insufficient to satisfy the prejudice prong of the *Strickland* inquiry.  *See Turrentine,* 390 F.3d at 1205.

And, finally, with regard to Applicant's claim that counsel should have objected to improper jury instructions that failed to require the jury to find that the victim was both a child and under eighteen years old, the state appellate court's interpretation of the state statue is controlling.  *See Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").   The Court thus is bound by the Colorado Court of Appeals'

interpretation that the phrase "child less than eighteen years of age" in §18-3-405.3(1), C.R.S., "mean[s] simply that persons under the age of eighteen are children in the eyes of the law in Colorado." [ECF No. 26-1, at 10].  As such, Applicant cannot show a reasonable likelihood that he would have been acquitted if his trial counsel had challenged a jury instruction which, by the Colorado Court of Appeals' interpretation, comports with Colorado law.

In sum, the Court finds that the Colorado Court of Appeals' decision was based on an unrebutted reasonable determination of the facts in light of the evidence presented at Applicant's trial and comported with the *Strickland* standard.  Mr. Ponis therefore is not entitled to federal habeas relief for claims 1(a) - 1(d).

**B.  Challenge to Indeterminate Sentence under Eighth Amendment**

In claim 3(a), Mr. Ponis challenges his indeterminate sentence of eleven years to life under the SOLSA as grossly disproportionate to his crime, in violation of the Eighth Amendment.

"The Eighth Amendment contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citing and quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in the judgment)).  A sentence violates the Eighth Amendment if it is "grossly disproportionate to the severity of the crime."  *Ewing*, 538 U.S. at 21; *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("[O]ne governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years.").  "[T]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. at 77.

14

Supreme Court case law has not been a model of clarity in applying the gross proportionality principle. *See Harmelin*, 501 U.S. at 998 (1991) (Kennedy, J., concurring in part and concurring in the judgment). Indeed, gross proportionality cases are inherently fact-specific. *See e.g. Rummel v. Estelle*, 445 U.S. 263, 265-66, 275-76 (1980) (concluding that sentence of life imprisonment with possibility of parole imposed under state recidivist statute did not violate Eighth Amendment, where defendant had two previous felony convictions—one for "fraudulent use of a credit card to obtain $80 in goods or services" and another for "passing a forged check in the amount of $28.36" –and was then convicted of felony theft for "obtaining $120.75 by false pretenses"); *Hutto v. Davis*, 454 U.S. 370 (1982) (upholding against a proportionality attack a sentence of 40 years' imprisonment for possession with intent to distribute nine ounces of marijuana); *Harmelin*, 501 U.S. 957, 994 (1991) (plurality opinion holding that sentence of life imprisonment without parole for first-time offender's possession of 672 grams of cocaine did not violate the Eighth Amendment); *Ewing,* 538 U.S. at 30–31 (upholding against a proportionality attack a twenty-five year to life sentence imposed under a California recidivist statute for the offense of felony grand theft (i.e., stealing three golf clubs worth approximately $1,200); *Lockyer*, 538 U.S. at 77 (upholding on federal habeas review the state appellate court's determination that two consecutive twenty-five-year to life sentences imposed under a state recidivist statute for two counts of petty theft did not violate clearly established Supreme Court Eighth Amendment jurisprudence).

The Supreme Court has only twice invalidated a sentence under the Eighth Amendment. *See Weems v. United States*, 217 U.S. 349 (1910) (defendant sentenced to fifteen years in chains and hard labor for falsifying a public document); *Solem v. Helm*,

463 U.S. 277 (1983) (defendant sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check).

In *Solem*, the Supreme Court instructed the lower courts to consider the following three criteria in analyzing proportionality claims under the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem*, 463 U.S. at 292.

The Supreme Court revisited the proportionality issue in *Harmelin*. In a fractured opinion, Justice Kennedy, joined by Justices O'Connor and Souter, wrote separately to argue for the existence of a narrow proportionality guarantee. *Harmelin*, 501 U.S. at 996 (Kennedy, J., concurring in part and concurring in the judgment). In reviewing the three-part test articulated by the Court in *Solemn,* Justice Kennedy stated:

> *Solem* is best understood as holding that comparative analysis within and between jurisdictions is not always relevant to proportionality review . . . . A better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality . . . . The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.

*Id*. at 1004–05.

The United States Court of Appeals for the Tenth Circuit has determined that "Justice Kennedy's opinion in *Harmelin* narrows *Solem* and sets forth the applicable Eighth Amendment proportionality test." *Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th

Cir. 1999).[4]

The Colorado Court of Appeals conducted an abbreviate proportionality review of

Applicant's sentence and evaluated (1) the gravity of the crime and (2) the harshness of

the penalty. [ECF No. 26-3, at 17, citing *People v. Close*, 48 P.3d 528, 535 (Colo. 2002)

(citing *Harmelin*)]. The state appellate court first determined, based on state case law,

that the crime of sexual assault on a child by one in a position of trust is a grave and

serious crime in Colorado. [ECF No. 26-3, at18]. The Colorado Court of Appeals then

rejected Applicant's claim that his sentence was grossly disproportionate to his crime

based on the following reasoning:

> We conclude that the indeterminate life sentence in this case does
> not give rise to an inference of gross disproportionality, thereby requiring
> the trial court to conduct an extended proportionality review [under the
> second and third criteria of *Solem*]. As noted above, the case law in
> Colorado clearly defines the crime of sexual assault on a child by one in a
> position of trust as a "grave or serious" crime. Thus, we may proceed
> directly to consider the harshness of the penalty. *See Close*, 48 P.3d at
> 542.
>
> Here, the trial court found it egregious that [Applicant] committed the
> crime while he was in a position of trust as a coach, teacher, and mentor at
> a public high school "as part of a scheme to seduce high school senior girls
> for [his] own sexual gratification." Further, the court found J.W. "had no
> appropriate adult male model in her life, and was having self-image and
> self-worth problems at the time." *See* [*People v.*] Strean, 74 P.3d [387,]
> 396 [(Colo. App. 2002)] (crime of sexual assault on a child by one in a
> position of trust is serious and grave because, among other things, it
> involves "situations in which an adult treats a vulnerable child as a tool for
> sexual gratification").

---

[4]The controlling position is the one "taken by those Members who concurred in the judgments on
the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). Seven members of the
*Harmelin* Court (Kennedy, O'Connor, and Souter, JJ., concurring, and White, Blackmun, Stevens, and
Marshall, JJ., dissenting) supported some Eighth Amendment guarantee against disproportionate
sentences. However, five Justices (Scalia, J., and Rehnquist, C.J., writing the opinion of the Court, and
Kennedy, O'Connor, and Souter, JJ., concurring) rejected the continued application of all three factors in
*Solem.*

Having determined that [Applicant's] conviction for sexual assault on a child by one in a position of trust as part of a pattern of abuse was grave and serious, we cannot say that the legislatively mandated indeterminate sentence here was so harsh as to give rise to an inference of gross disproportionality. *See Close*, 48 P.3d at 542; *Strean*, 74 P.3d at 396.

We reject [Applicant's] arguments that, inter alia, his minimum prior criminal history and the fact that J.W. was within months of her eighteenth birthday at the time [Applicant] began his sexual relationship with her, compel a contrary conclusion. The trial court properly considered these factors, among others, in exercising its discretion to impose the minimum eleven-year term of [Applicant's] sentence. In enacting SOLSA, however, the General Assembly created a comprehensive sentencing scheme for cases such as this, which includes mandatory indeterminate sentencing, with a maximum of life in prison; lifetime supervision and treatment of sex offenders; and discretionary parole review by the parole board after the minimum portion of the indeterminate sentence has been served. See *Strean*, 74 P.3d at 394-95. Here, under that scheme, [Applicant] may or may not serve a life sentence, depending on how he responds to the required treatment and supervision. Thus, in concluding that the potential for a life sentence here does not give rise to an inference of gross disproportionality, we are guided and bound by the supreme court's direction to give great deference to legislatively mandated sentencing schemes." *Deroulet*, 48 P.3d at 527.
. . .

Accordingly, we conclude the lifetime portion of [Applicant's] indeterminate sentence does not violate the constitutional prohibition on cruel and unusual punishment.

[ECF No. 26-3, at 19-22].

To reiterate, the law is clearly established that a gross disproportionality principle is applicable to sentences for terms of years. *Lockyer*, 538 U.S. at 72. On federal habeas review, the Court is mindful, however, that the Supreme Court decisions on proportionality "recognize that [the Court] lack[s] clear objective standards to distinguish between sentences for different terms of years." *Harmelin*, 501 U.S. at 1001. The imprecise "contours" of the gross-disproportionality principle gives state courts, such

as the Colorado Court of Appeals, more "leeway" due to the general nature of the rule *Richter*, 131 S.Ct. at 786.

Here, the Colorado Court of Appeals addressed the gravity of Applicant's offense and the harshness of the penalty imposed, which are factors relevant to the gross proportionality determination under Supreme Court case law.  *See Ewing*, 538 U.S. 22 (directing the courts to review the gravity of the offense to determine if it matches the severity of the punishment); *Solem*, 463 U.S. at 291-92; *Harmelin*, 501 U.S. at 1002-1004 (Kennedy, J., concurring in part and concurring in the judgment) (comparing the gravity of the petitioner's offense to the sentence of life imprisonment without parole). The state appellate court's determination that the offense of sexual assault on a child by a person in a position of trust is a grave and serious crime under Colorado law is not subject to challenge in this federal habeas proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").   Moreover, the Colorado Court of Appeals made a reasonable determination that Applicant's sentence was not so harsh "as to give rise to an inference of gross disproportionality" based on factual findings which are presumed correct, but not rebutted, in this federal habeas proceeding and are supported by the state court record.  Mr. Ponis does not point to any clear and convincing evidence to the contrary.

In addition, Applicant's sentence was within the permissible statutory range for the offense he committed.  This Court is reluctant to interfere with the legislative determination of an appropriate sentence range. *See Rummel*, 445 U.S. at 275-76

(concluding that length of prison sentences for serious felonies is "properly within the province of legislatures, not courts"); *Harmelin*, 501 U.S. at 998 (same) (citing *Rummel).*

Furthermore, Applicant's sentence provides opportunity for parole after a minimum sentence is served.  *See Rummel*, 445 U.S. at 280-81 (finding it significant that the defendant had the possibility of parole, and concluded that the possibility of parole, however unlikely, distinguished the defendant from someone serving a life sentence without parole).

And, finally, Applicant's circumstances do not differ significantly from those in cases where the Supreme Court has rejected Eighth Amendment proportionality challenges.  *See e.g. Harmelin,* 501 U.S. at 994; *Hutto*, 454 U.S. at 375.

Heeding the Supreme Court's admonition that a constitutional violation based on the gross proportionality principle is reserved for "only the extraordinary case," *Lockyer*, 538 U.S. at 77, the Court cannot find that the state appellate court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786-87.  As such, the state appellate court's decision was not contrary to, or an unreasonable application of Supreme Court law.  The Court need not reach Applicant's arguments, under the second and third *Solem* factors, that his sentence was grossly disproportionate to his crime when compared to the sentences of similar offenders in Colorado and in other jurisdictions.  *See Harmelin*, 501 U.S. at 1004-05.  Mr. Ponis cannot prevail on claim 3(a).

### IV.  MOTION FOR RECONSIDERATION

On August 23, 2012, Mr. Ponis filed, *pro se*, a Motion to Reconsider Order Partially Dismissing Claims [ECF No. 42].  In the Motion, he argues that his procedural default of claims 1(e) - 1(k), 2(a) - 2(e), and 3(b) and 3(c) should be excused because his direct appeal counsel was constitutionally ineffective, and because he was not assisted by counsel in his state post-conviction proceeding.

A district court has discretion to revise interlocutory orders prior to entry of final judgment. *Price v. Philpot*, 420 F.3d 1158, 1167 n. 9 (10th Cir. 2005) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."); *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n. 1 (10th Cir.1991) (noting that a motion for reconsideration filed prior to final judgment "was nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment."); *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir.1988) (citing Fed.R.Civ.P. 54(b)).  The district court's discretion to revise its interlocutory orders is not limited by the standards for reviewing a post-judgment motion filed pursuant to Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure.  *See Raytheon Constructors Inc. v. ASARCO, Inc.,* 368 F.3d 1214, 1217 (10th Cir. 2003) (stating that "[t]he district court was incorrect to treat the plaintiff's motion for reconsideration [of an interlocutory order] under Rule 60(b) which only applies to final orders or judgments.").

Mr. Ponis asserts no basis for the Court to reconsider the August 7, 2012 Order dismissing claims 2(a) - 2(e), 3(b) and 3(c) as procedurally defaulted.  With regard to the procedurally barred ineffective assistance of counsel claims (claims 1(e) - 1(k)),

Applicant argues that the lack of counsel in his post-conviction proceeding excuses his procedural default of those claims, pursuant to *Martinez v. Ryan*, , ___ U.S. ___, 132 S. Ct. 1309 (2012).

In *Martinez*, the Supreme Court held that where a state permits a defendant to challenge the assistance of trial counsel only in a post-conviction proceeding, then the absence of post-conviction counsel, or ineffective assistance of post-conviction counsel, in the post-conviction proceeding can constitute cause for the habeas petitioner's default of claims of ineffective assistance of trial counsel.[5]  *Martinez*, 132 S.Ct. at 1318.  The petitioner must also show that the underlying ineffective assistance of counsel claim is "substantial" – i.e., has "some merit."  *Id.*  The holding in *Martinez* recognized an exception to the general rule announced in *Coleman* – that habeas petitioners have no constitutional right to post-conviction counsel in the first instance and so deficient performance by whatever counsel they may have ordinarily does not excuse procedural default. *Coleman*, 501 U.S. at 752-55; *see also Martinez*, 132 S. Ct. at 1315.

The rule of *Martinez* applies only when "the State barred the defendant from raising the claims on direct appeal," so that post-conviction proceedings are the petitioner's first opportunity to present the claim. *Id.* at 1320.

The Colorado Supreme Court "has expressed a preference for having ineffective assistance of counsel claims brought in Crim. P. 35(c) proceedings."  *People v. Thomas*, 867 P.2d 880, 886 (Colo. 1994) (internal citations omitted); *Ardolino v. People*, 69 P.3d

---

[5]A claim that has been procedurally defaulted in the state courts on an independent and adequate state procedural ground is precluded from federal habeas review, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the federal violation, or show that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Harris v. Reed*, 489 U.S. 255, 269-70 (1989)).

73, 77 (Colo. 2003) ("In light of the considerations potentially involved in determining ineffective assistance, defendants have regularly been discouraged from attempting to litigate their counsels' effectiveness on direct appeal.")). "Review of a claim of ineffective assistance of trial counsel that is raised on direct appeal is limited to the existing record." *Downey v. People*, 25 P.3d 1200, 1202 n.3 (Colo. 2001) (citing *People v. Blehm*, 983 P.2d 779, 792-93 (Colo. 1999); *see also People v. Apodaca*, 998 P.2d 25, 29 (Colo. App.1999) (citing *Thomas*); *People v. Price,* 240 P.3d 557, 565 (Colo. App. 2010) ("Only 'in rare instances' are ineffective assistance of counsel claims presented so that they 'need no further [factual] development prior to review on direct appeal.'") (quoting *People v. Kelling*, 151 P.3d 650, 655 (Colo. App. 2006)). Upon a careful review of Colorado case law, the Court finds that Colorado requires ineffective assistance of counsel claims to be raised in a post-conviction proceeding unless the claim can be resolved on the record.

The Court need not determine whether some or all of Applicant's procedurally defaulted ineffective assistance of counsel claims were amenable to resolution based solely on the state court record. Instead, the Court finds that *Martinez* does not assist Mr. Ponis here because his claims of ineffective assistance of counsel are not "substantial." *See Martinez*, 132 S. Ct. at 1318.

The Court observed in the August 7, 2012 Order to Dismiss in Part that the issues raised in claims 1(f), 1(g), 1(i), 1(j) and 1(k) appeared to be duplicative of the issues raised in claims 1(a) through 1(d). The Court finds that claims 1(f), 1(g), 1(i), 1(j) and 1(k) are not substantial for purposes of the *Martinez* inquiry because they fail under the prejudice prong of the *Strickland* analysis. As discussed previously, the state court

23

record demonstrates that the evidence against Mr. Ponis was overwhelming.  Applicant

has failed to show the that the likelihood of a different outcome, but for counsel's alleged

errors, was substantial, not just conceivable.  *Strickland*, 466 U.S. at 693.  Furthermore,

to the extent claims 1(f), 1(g), 1(i), 1(j) and 1(k) are not duplicative of claims 1(a) - 1(d),

Applicant's articulation of the claims is too vague to support a claim of ineffective

assistance of counsel.  Accordingly, the Court finds that the trial court's failure to appoint

counsel in Applicant's state post-conviction proceeding does not excuse his procedural

default of claims 1(f), 1(g), 1(i), 1(j) and 1(k) and the Court declines to reconsider its

dismissal of those claims.

 For claim 1(e), Mr. Ponis asserts that his direct appeal counsel was ineffective in

failing to raise issues on direct appeal that would have been successful, but were  barred

by a state procedural rule in Applicant's post-conviction proceeding.  However, *Martinez*

applies only to "a prisoner's procedural default of a claim of ineffective assistance at

trial," not to claims of deficient performance by appellate counsel.  *Martinez*, 132 S.Ct. at

1315 (emphasis added); *see also Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir.

2012).  Accordingly, the Court will not reconsider the dismissal of claim 1(e) as

procedurally barred.

 In claim 1(h), Applicant claims that trial counsel was ineffective in failing to object

to the prosecutor's questions and closing argument concerning Applicant's extra-marital

affairs.  Again, however, Applicant cannot show that the outcome of his trial would have

been different if counsel had objected to the prosecutor's alleged misconduct.  The

evidence of Applicant's guilt was substantial, and included his admission to almost every

element of the charges against him, except for the dates of the sexual incidents and his

reasonable knowledge about the victim's age.  There was significant evidence that Mr. Ponis knew the victim was seventeen at the time of their sexual relationship, including the victim's testimony and the Applicant's own statements during the recorded telephone conversations with the victim.  As such, the Court finds that there is no reasonable probability that the questions and comments by the prosecutor concerning Applicant's sexual relationships with other individuals affected the jury's verdict.  *See Strickland*, 466 U.S. at 699.  The Court therefore will not reconsider the order dismissing claim 1(h) as procedurally barred.

Finally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962). If Mr. Ponis files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

**V. ORDERS**

**THEREFORE, IT IS ORDERED** as follows:

1.  Applicant's Motion to Reconsider Order Partially Dismissing Claims [ECF No. 42], filed on August 23, 2012, is DENIED.

2.  The Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [ # 15] filed on March 30, 2012, by Applicant Kevin Ponis, is DENIED.

3.  The Amended Motion for Summary Judgment [ECF Nos. 38] and Motion for a Hearing [ECF No. 40], filed on August 21, 2012, are DENIED AS MOOT.

4.  This case is DISMISSED WITH PREJUDICE.

5.  There is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

6.  Leave to proceed *in forma pauperis* on appeal is DENIED.  Mr. Ponis may file a motion in the United States Court of Appeals for the Tenth Circuit.

Dated at Denver, Colorado this  21st  day of   February          , 2013.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court